IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Joseph Sampson, #261610, ) | |
| ) | Civil Action No. 6:05-0343-CMC-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Fairfield Co. Detention Center, ) | |
| and Officer Carl Gray, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on motion of defendant William Carl Gray, Jr.[1] ("defendant") for summary judgment pursuant to Federal Rule of Civil Procedure 56. In his complaint, the plaintiff, who is proceeding *pro se*, alleges civil rights violations while he was held as a pretrial detainee at the Fairfield County Detention Center ("FCDC").

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff filed his complaint on February 8, 2005, alleging that the defendant violated his constitutional rights. On May 2, 2005, the defendant filed a motion for summary judgment. By order filed May 12, 2005, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. After three extensions of time, the plaintiff filed a response to the defendant's motion on October 18, 2005.

---

[1] By order of this court filed February 9, 2005, this court directed that the other named defendant, the Fairfield County Detention Center, should not be served because it is not a "person" subject to suit under 42 U.S.C. §1983.

**FACTS PRESENTED**

The *pro se* plaintiff, Joseph Sampson, was a pretrial detainee at the FCDC in September 2004 on charges of possession of crack cocaine, second and resisting arrest. The plaintiff is currently incarcerated with the South Carolina Department of Corrections at the Kershaw Correctional Institution. In his complaint, the plaintiff asserts that on September 1, 2004, and the early morning hours of September 2, 2004, he had a verbal altercation with the defendant, who was a corporal with the FCDC, and that the defendant used excessive force upon him while he was in restraints. The defendant is now a sergeant with the FCDC.

The defendant submitted several affidavits in support of his motion. According to the defendant's affidavit, while he was on duty in Unit A at the FCDC on September 1, 2004, the plaintiff was yelling loudly, and the defendant asked him more than once to stop. The plaintiff went up to the defendant and threatened him "in a profane manner." The defendant called for backup and ordered the plaintiff to stay in the interlock area until backup arrived. The defendant then escorted the plaintiff to the intake area and placed him in a holding cell to calm down. The plaintiff began standing on the sink and toilet and yelling to other inmates, and he disobeyed the defendant's repeated directives to stop. The defendant called for assistance and retrieved restraints from the property room. Officers Paul Craig, Jr., and Patricia Walker arrived, and the defendant warned the plaintiff that if he did not refrain from standing on the sink and yelling profanity, he would be placed in restraints. The plaintiff ignored the defendant's directives and got in the defendant's face "while yelling profane and physical threats" at him. He continued to yell at and threaten the defendant while the defendant attempted to restrain him. The plaintiff then refused to remain against the wall and physically resisted and grappled with the defendant in his attempts to restrain the plaintiff. The defendant physically restrained the plaintiff "with the minimum force necessary so that he could be placed in restraints." The plaintiff was then placed in a holding cell (Gray aff. ¶¶ 1-14; Craig aff. ¶¶ 1-8; Walker aff. ¶¶ 1-10).

The plaintiff then complained that his restraints were too tight. As a result, the defendant and Officer J. Talbert entered the cell to examine the restraints, and the plaintiff jumped at the defendant in a "threatening manner." The defendant again physically restrained the plaintiff (Gray aff. ¶¶ 15-16). According to the incident report prepared by Officer Talbert, when he arrived in the cell, the defendant was asking the plaintiff to calm down, but the plaintiff continued to curse at the defendant. According to the report, the defendant physically restrained the plaintiff twice while Officer Talbert was in the cell (pl. resp. m.s.j., ex. A). At that time, Sergeant Jessie Crank, the supervisor on duty, arrived (Gray aff. ¶¶ 15-16). The defendant left the cell, and Sergeant Crank attempted to calm the plaintiff. The plaintiff continued to disobey the directives and threatened Sergeant Crank physically. Accordingly, Sergeant Crank decided to place the plaintiff in administrative segregation. Sergeant Crank saw no physical injuries to the plaintiff, and the plaintiff did not express any serious medical needs (Gray aff. ¶¶16-18; Crank aff. ¶¶ 7-12). The defendant, Sergeant Crank, Officer Walker, and Officer Craig all testified that they were aware that the plaintiff had previously been problematic with officers at the FCDC.

The plaintiff filed a grievance on September 2, 2004, alleging that the defendant used excessive force and caused his arm to be hurt. The Director of the FCDC, Ed McCrory, investigated the grievance and concluded that the plaintiff was not injured and the officers and staff of FCDC handled the incident appropriately. He further found that the defendant did not use excessive force. He prepared a written report on October 6, 2004, advising the plaintiff of his findings (McCrory aff. ¶¶ 1-11, ex. A).

Sergeant Teresa Lawson of the FCDC testified in her affidavit that as part of her duties as a Certified Nursing Assistant she examined the plaintiff on September 6, 2004, for complaints of neck and arm pain. She found nothing wrong with the plaintiff upon evaluation, but referred him to Dr. Roger A. Gaddy for an additional precautionary evaluation. Dr. Gaddy evaluated the plaintiff on September 7, 2004, and found no evidence of abnormality, no

3

increased warmth, good range of motion, and no pain on abduction relative to the plaintiff's complaints. Further, an x-ray taken that same day was negative (Lawson aff. ¶¶ 1-8, ex. A).

The plaintiff alleges in his complaint that while he was in restraints the defendant ran "full speed" into him, and threw him into the wall and on to the floor. He claims the defendant choked him, and that Sergeant Crank had to yell at the defendant to get him off of the plaintiff (comp. at 4-5). In his response to the motion for summary judgment, the plaintiff states that because of the defendant's actions, his neck and arm were hurt. He also makes the allegation, which was not included in his complaint, that his neck pain was never addressed by the doctor (comp. at 3-4).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The plaintiff alleges that the defendant used excessive force against him. In *Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997), the Fourth Circuit Court of Appeals concluded that the excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. Additionally, the proper analysis under the Fourteenth Amendment is "whether the force applied was 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998).

The affidavits submitted in support of summary judgment show that the plaintiff had a verbal altercation with the defendant and repeatedly disobeyed his directives. The plaintiff admits in his complaint that he made several comments to the defendant, including telling the

defendant that he had a "negative attitude" and that if he "could not handle his love life, [he] could" (comp. 3-4). The plaintiff also admits that when he was put in a holding cell, he sat on the sink and "did not get up fast enough for [the defendant]" (comp. at 3). When he disobeyed the defendant's directive to get off of the sink and stop yelling at other inmates, the plaintiff was placed in restraints. According to the affidavits of three correctional officers, the plaintiff resisted and yelled threats at the defendant, and the defendant physically restrained the plaintiff "with the minimum force necessary." According to the defendant's affidavit, when the plaintiff complained that his restraints were too tight, he re-entered the cell to examine them, and the plaintiff came at him in a threatening manner. The defendant testified that he again physically restrained the plaintiff "with the minimum force necessary." When Sergeant Crank arrived, the plaintiff continued to disobey directives and threatened Sergeant Crank physically. While the plaintiff claims that the defendant threw him against the wall, choked him, put his full weight on the plaintiff's chest, and had his arm cut, he has come forward with no evidence other than his unsupported allegations. Sergeant Crank did not observe any injuries to the plaintiff, and he did not complain to Sergeant Crank of any injury after the incident. Further, when the plaintiff was examined by the medical staff, no injury was noted, and an x-ray was negative.

In *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) the court held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." Further, "extraordinary circumstances are present when 'the force used [is] of a sort repugnant to the conscience of mankind … or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury.'" *Taylor*, 155 F.3d at 483-84 (citing *Norman*, 25 F.3d at 1263 n. 4). Importantly, in *Riley*, the court extended the holding of *Norman* to excessive force claims brought by pretrial detainees. *Riley*, 115 F.3d at 1166.

Likewise, in the present case, the lack of any serious injury compels the conclusion as a matter of law that the plaintiff suffered no constitutional deprivation when he was

6

restrained by the defendant. *See Taylor,* 155 F.3d at 484 ("temporary swelling and irritation is precisely the type of injury this Court considers *de minimis*."); *Stanley v. Hejirika*, 134 F.3d 629, 637-38 (4th Cir. 1998) ("bruising of his right arm, left jaw, left and right wrists and back, and a tooth which was loosened" constituted *de minimis* injury); *Williams v. Dehay*, Nos. 94-7114 and 94-7115, 1996 WL 128422 (4th Cir. 1996) (unpublished) ("[t]ransitory back and shoulder aches of limited duration is at most a *de minimis* injury").

Based upon the foregoing, this court finds that the plaintiff has failed to show an issue of material fact with regard to "whether the force applied was 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Accordingly, summary judgment should be granted. Furthermore, to the extent that the plaintiff alleges any violations of the FCDC policies (comp. at 2), the violations do not give rise to any federal constitutional claim. *See Leverette v. Bell*, 247 F.3d 160, 169 (4th Cir. 2001) ("That the search deviated from SCDC's formal policies and procedures does not render it unreasonable under the Fourth Amendment. Even if SCDC's policy against conducting body cavity searches on employees was violated here, such a violation does not in itself rise to constitutional dimensions.").

Lastly, to the extent the plaintiff's complaint could be construed to allege a claim of medical indifference, the claim fails. "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) (citing *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988)).

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a

violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied,* 500 U.S. 956 (1991). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The plaintiff has failed to show either a serious medical need or that the defendants were deliberately indifferent to his need. Accordingly, this claim fails.

The defendant also argues that he is entitled to qualified immunity. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual

8

constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendant violated any of his constitutional rights. Therefore, the defendant is entitled to qualified immunity.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendant's motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

December 6, 2005

Greenville, South Carolina